UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 09-CV-107-HRW

ATUM N. MAMBE                                                    PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

WARDEN, FEDERAL CORRECTIONAL
        INSTITUTION ASHLAND                                      DEFENDANT

Plaintiff Atum N. Mambe ("Mambe") is currently confined in the Federal Correctional Institution-Allenwood Medium ("FCI-Allenwood") which is located in White Deer, Pennsylvania.[1]  Mambe has filed a civil rights Complaint, R. 1,  and a letter dated December 18, 2009, R. 12, which the Court has construed as an Amended Complaint.  *See* Order, R. 11.

In those filings, Mambe appeared to be challenging disciplinary proceedings and the conditions of his confinement at another Bureau of Prisons ("BOP") facility where he was previously confined, the Federal Correctional Institution located in Ashland, Kentucky ("FCI-Ashland").  Mambe's construed claims fall under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 430 U.S. 388 (1971).

The Court screens civil rights complaints pursuant to 28 U.S.C. § 1915A.  *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).  Additionally, the Court screens the

---

[1]

Mambe was previously confined in the Federal Correctional Institution located in Ashland, Kentucky ("FCI-Ashland").  He originally filed his complaint on November 24, 2009, in the United States District Court for the District of Maryland.  *See Mambe v. Warden, Federal Correctional Institution Ashland*, No. WMN-09-3054 (D. Md.)  The action was transferred to this Court on December 16, 2009, because of the venue considerations set forth in 28 U.S.C. § 1391(b).  R. 5.

Complaint and Amended Complaint under 28 U.S.C. § 1915(e) because Mambe is proceeding *in forma pauperis*.[2]  Both of these sections require dismissal of any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief.  *Id.* §§ 1915(e) & 1915A.

*Pro se* complaints are held to less stringent standards than those drafted by attorneys.  *See Wagenknect v. United States*, 533 F.3d 412, 415 (6th Cir. 2008).  Moreover, at the screening phase, the allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff.  *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

As set forth below, Mambe has failed to state a claim upon which relief can be granted as to any of his construed claims.  Accordingly, the Court will dismiss with prejudice the various claims asserted in the Complaint and the Amended Complaint.

## MAMBE'S ALLEGATIONS
### 1. Original Complaint, R. 1

In his original letter, docketed as a Complaint, R. 1, Mambe asserted claims against BOP administrators and staff at FCI-Ashland involving alleged assaults and numerous disciplinary infractions he received there during September and November of 2009.  The following is a summary of Mambe's allegations set forth in his original Complaint.

Mambe claims that on August 31, 2009, Unit Manager Brian E. Sparks physically assaulted him and that as a result, he was placed in the Segregated Housing Unit ("SHU") for his protection.  Thereafter, he was sent back to his compound on October 26, 2009; was then

---

[2]

By separate Order, R. 15, this Court granted Mambe's motion to proceed *in forma pauperis*.

placed in the Protective Custody section of the SHU; but was finally sent back to his compound on November 2, 1009, "with no regard to my fears and recent past occurrences." *Id*, p. 1.

Mambe claims that at the Unit Disciplinary Committee hearing which ensued from the foregoing events, Sparks falsely accused Mambe of verbally threatening him with bodily harm. As a result of Spark's allegation, Mambe received another Incident Report. *Id*, p. 2. Mambe claims that all of the disciplinary actions taken against him were in retaliation for him (Mambe) accusing Sparks of physically assaulting him. *Id*. Mambe denied having verbally assaulted or threatened Sparks; noted that he had been restrained in hand-cuffs when he allegedly verbally threatened Sparks; and claimed that an FCI-Ashland employee who observed the entire incident had been forced into signing a statement incriminating him. *Id*.

Mambe explained that he wanted to notify the Court of the events because he feared that he would become the target of "some evil conspiracy;" asked the Court to forward his complaints to the United States Marshal's Service and the BOP; stated that he should be placed in a minimum security BOP prison camp which has vocational and educational programs; and claimed that Sparks had singled him out and had racially targeted him. *Id*., pp. 2-3.

## 2. Amended Complaint, R.12

Mambe stated that on December 1, 2009, he was found guilty of verbally threatening Sparks, despite the fact that a prison employee had stated in a written report that he was not guilty of the offense. R. 9, p.1. Mambe lost 27 days of good-time credit ("GTC"). *Id*. Mambe was ordered back to the compound under Sparks's control; protested and refused to obey the order; and was then charged with violating BOP Code 306 for refusing to return to the

3

compound.  *Id.*, pp. 1-2.

Mambe states that he wrote to the Warden to express concerns about his safety if he were required to be confined in Sparks's unit, and that Warden agreed with his concerns.  *Id.*, p. 2. On December 14, 2009, Case Manager Mark Wallace informed Mambe that he had been approved for a transfer, but that his recent disciplinary conviction concerning Sparks, and "extreme violence" on his part, had caused his classification/custody score to be increased from an low score of "8" to a higher score of  "14."  Mambe complained that this result was "cruel, unusual, unjust and against all ethical codes of conduct." *Id.*  He again asked that his complaints on this issue "be included in the complete record and civil/criminal action case." *Id.*, pp. 2-3.

## DISCUSSION

Mambe's claims fail for a variety of reasons.  First, Mambe fails to state what relief he seeks as result of filing his Complaint and Amended Complaint.  Does he seek damages? Does he seek injunctive relief? These questions remain unanswered because Mambe did not specify what type of relief he was seeking.

Instead, Mambe provided only a therapeutic summary of events and his opinion of the events described in his filings, almost in the form of a running journal or diary, of which he asks the Court to take note.  He plainly states in his submissions that he was reporting his housing, disciplinary and classification issues to ensure that there was a record of his complaints.  But other than that, he failed to apprise the Court what relief, if any, he was seeking.

*Pro se* litigants are to be held to less stringent standards than trained lawyers.  While  a *pro se* complaint is to be given generous construction, "the principles requiring generous

4

construction of *pro se* complaints are not, however, without limits. *Gordon* directs district courts

to construe *pro se* complaints liberally. It does not require those courts to conjure up questions

never squarely presented to them" *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir.

1985) (citing *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978)).

Furthermore, Fed. R. Civ. P. 8(a)(3) requires that a complaint contain "a demand for judgment

for the relief the pleader seeks."

In *Gill v. Tillman*, No. 99-0648, 2001 WL 395051 (S.D. Ala. 2001, March 28, 2001), the

plaintiff's requested relief in his complaint was: "Relief to be determined as the case proceeds."

*Id.*, at *3. The court dismissed the complaint, finding that because the relief demanded did not

constitute a demand for judgment in compliance with Fed. R. Civ. P. 8(a)(3), the complaint

failed to state a claim upon which relief could be granted.

*Tillman* relied on *Goldsmith v. City of Atmore*, 996 F.2d 1155 (11th Cir. 1993). In

*Goldsmith*, the court found that the plaintiff's initial complaint was deficient because it did not

comply with Rule 8(a)(3)'s requirement that the complaint contain a demand for judgment. The

court stated as follows:

> Rule 8(a)(3)'s] requirement is not arduous--any concise statement identifying the
> remedies and the parties against whom relief is sought will be sufficient."
> (quoting 5 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure*
> § 1255 at 366 (2d ed. 1990)).

*Goldsmith*, 996 F.2d at 1161.

 *See also Player v. Phoenix*, 1992 WL 350780 at *1 (S.D. N.Y. Nov. 13, 1992)

(unpublished) (action dismissed *sua sponte* for failure to state claim due to the lack of demand

for judgment in the amended complaint); *cf. Dupree v. Lubbock County Jail*, 805 F. Supp. 20,

21 (N.D. Tex. 1992) (concluding that without a demand for judgment, only a demand for equitable relief could be construed).

Second, even affording Mambe's submissions the broadest possible reading and construing a request for injunctive relief, the claims still fail. If Mambe was seeking injunctive relief preventing him from being confined in Unit Manager Sparks's compound at FCI-Ashland, the request has become moot because Mambe has since been transferred to FCI-Allenwood.

Generally, an inmate's transfer to another prison moots his request for injunctive relief. *Lyons v. Azam*, 58 F. App'x. 85, 87 (6th Cir. 2003) ("[A] prisoner's claims for injunctive relief become moot when the prisoner is no longer confined at the prison where the claim allegedly arose.") (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)); *see also Jones v. Pancake*, No. 06-188, 2007 WL 2407271, at *2 (W. D. Ky. August 20, 2007) (where prisoner had alleged that prison officials had racially discriminated against him, prisoner's subsequent transfer to another facility mooted his Fourteenth Amendment claims and demands for injunctive relief because he was no longer subject to racially discriminatory placement practices).[3] Any construed demand for injunctive relief is now moot because Mambe has been transferred to FCI-Allenwood.

Third, as noted in the Order entered on January 6, 2010, R. 11, to the extent that Mambe challenges any of the disciplinary charges brought against him while he was confined in at FCI-

---

[3]

Case law from other federal circuits supports this conclusion, as well. *See McAlpine v. Thompson*, 187 F.3d 1213,1215 (10th Cir. 1999) (claims for injunctive relief are rendered moot upon release from confinement, or transfer to another facility) and *Green v. Branson*, 108 F.3d 1296 (10th Cir. 1997) (same).

Ashland, or the resulting loss of GTC, he would be required to bring such challenges in a petition for writ of habeas corpus, under 28 U.S.C. § 2241, not by way of a *Bivens* civil rights action. Nothing has changed the Court's recent explanation of this issue, set forth in that Order:

> Mambe cannot bring a *Bivens* action on these charges until his disciplinary convictions have been reversed, as success in a *Bivens* action would necessarily imply the invalidity of his conviction. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (holding that a claim that "necessarily impl[ies] the invalidity of the punishment imposed . . . is not cognizable under § 1983"); *Lanier v. Bryant*, 332 F.3d 999, 1005 (6th Cir.  2003) (applying *Balisok* to *Bivens* actions); and *Johnston v. Sanders*, 86 F. App'x 909, 910 (6th Cir. 2004) (prisoner could not challenge a disciplinary proceeding resulting in a loss of good-time credits in a *Bivens* action because his disciplinary conviction has not been reversed).

*See* Order, R. 11, pp. 3-4.

Mambe is free to file a § 2241 petition for a writ of habeas corpus challenging his disciplinary convictions and/or the loss of GTC in the judicial district where he is confined.[4] The Court cannot address any construed disciplinary challenges in this civil rights proceeding.

Fourth, to the extent that Mambe's submissions could be interpreted as seeking a criminal investigation of FCI-Ashland, he states no claim.  The law is well settled that 18 U.S.C. §§ 241 and 242 do not create private rights of action.  "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Booth v. Henson*, 290 F. App'x, 919, 920-21 (6th Cir. 2008) (dismissal of claims seeking criminal sanctions under 19 U.S.C. §§ 241 and 242 because a plaintiff has no private right of action under these criminal statutes).

---

[4]    The judicial district for FCI-Allenwood is the Middle District of Pennsylvania.  Mambe would also be required to exhaust any § 2241 claims in accordance with 28 C.F.R. § 542.14(d)(2).

Fifth, to the extent that Mambe seeks injunctive relief on his claim that his increased classification/custody score prevented him from being transferred to a lower security prison camp, he fares no better.  The Supreme Court has established that in order for any condition of confinement to qualify as an Eighth Amendment violation, the condition must impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  To make this showing, a prisoner must demonstrate the existence of a severe deprivation, such as the denial of "essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Neal v. Miller*, 778 F.Supp. 378, 382-83 (W.D. Mich. 1991) (citing *Rhodes v. Chapman*, 452 U.S. at 347-48)).

In *Sandin*, the Supreme Court stated that housing assignments and classification decisions (such as extended placement in disciplinary segregation and transfers to higher security prisons) are "ordinary incidents of prison life."  *Sandin*, 515 U.S. at 483.  It is well-settled that prison classifications, assignments, and transfers are functions wholly within the discretion of the BOP. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983).

Moreover, federal prisoners do not have a due process liberty interest in their classification while incarcerated. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976).  Similarly, federal prisoners do not have a liberty interest in remaining free from discretionary transfers to less agreeable prisons, *Meachum*, 427 U.S. 215, 225 (1976), or in being housed in a particular institution or a particular part of an institution.  *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Thus, Mambe's transfer to a higher security prison, instead of a  prison camp, does not implicate a claim under either the Fifth Amendment Due Process Clause or the Eighth

8

Amendment's prohibition against cruel and unusual punishment. *See Mader v. Sanders*, 67 F. App'x 869, 871 (6th cir. 2003) (because Mader had no due process liberty interest in his placement and classification while incarcerated, neither his due process nor equal protection rights were violated by BOP's refusal to transfer him to another facility with other inmates that had the same custody classification).

Sixth and finally, the only defendant whom Mambe has named is the Warden of FCI-Ashland. Mambe has not, however, alleged that the Warden had any actual knowledge of the alleged activities described in his filings. Supervisory *Bivens* liability cannot be established solely on a theory of respondeat superior. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Kesterson v. Luttrell*, 172 F.3d 48, 1998 WL 894843 (6th Cir., December 15, 1998) (table) (*respondeat superior* doctrine does not apply in *Bivens* lawsuits to impute liability onto supervisory personnel).

If Mambe intends to assert file a future civil rights action seeking damages from Unit Manager Brian E. Sparks, he is advised that he must fully exhaust such claims through the BOP's administrative remedy process, found at 28 C.F.R. §§ 542.10-19.[5]

---

[5]

Title 28, Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request (a BP-9 form) to the Warden. *See id*. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal by filing a BP-10 form with the Regional Director, and if the inmate is not satisfied with the Regional Director's response, he may appeal by filing a BP-11 form with the Office of General Counsel. *See id*. § 542.15 (a)-(b).

<u>CONCLUSION</u>

The Court being sufficiently advised, it is **ORDERED** as follows:

1.      Atum Mambe's Complaint, R.1, and Amended Complaint, R. 12, are

**DISMISSED WITH PREJUDICE.**

2.      This action will be **DISMISSED**, *sua sponte*, from the docket of the Court, and

Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in

favor of the named defendants.

This March 19, 2010.

Signed By:

*Henry R Wilhoit Jr.*

**United States District Judge**

10